HORACE H. STODDARD, Defendant in Error, *vs.* THE ILLINOIS IMPROVEMENT AND BALLAST COMPANY, Plaintiff in Error.

*Opinion filed October 24, 1916.*

1. LEASES—*rule for construing lease.* In construing a lease the court should endeavor to give effect to every clause therein, and it is to be assumed, in the first instance, that the lease was given for the mutual benefit of the parties and that they were not joining in a mere nominal lease and using meaningless words and terms.

2. SAME—*lease construed as requiring a lessee to quarry stone with reasonable diligence.* A lease of land to continue for ten years "or as long thereafter as the property is suitable for quarrying purposes," implies that the lessee and his assigns shall quarry stone with reasonable diligence so long as stone is found which may be quarried at a profit to the lessee, where the rental is based upon a stipulated price per cubic yard for the stone quarried and sold by the lessee, and where the lessor is given the privilege of examining the lessee's books at any time and is given a lien on the machinery and buildings of the lessee for the amount due as rent.

3. SAME—*burden is not upon lessor to show that quarry contains stone suitable for quarrying.* A lessor who sues an assignee of the lessee for damages due to a failure to quarry stone during

the remainder of the term, as contemplated by the lease, does not have the burden of showing that the quarry contains stone suitable for quarrying at a profit to the defendant, but the burden is on the defendant to establish, as an affirmative defense, the contrary of such proposition.

4. SAME—*when assignee of lease is liable in damages.* Where a lease of land for a stone quarry contemplates that the lessee shall quarry stone with reasonable diligence for the entire term if stone can be found which can be quarried at a profit, an assignee of the lease for the unperformed term who retains possession of the property but quarries no stone is liable in damages for the amount of stone, at the royalty price fixed by the lease, which it could by reasonable diligence have quarried and sold at a profit for the remainder of the term; and it is no defense that the machinery put in by the original lessee is not adequate.

5. COURTS—*effect of rule 19 of the municipal court of Chicago.* Under rule 19 of the municipal court of Chicago, allegations of fact in the statement of claim which are not denied specifically or by necessary implication in the affidavit of defense must be taken as admitted.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. HENRY C. BEITLER, Judge, presiding.

KNAPP & CAMPBELL, (JOHN R. COCHRAN, of counsel,) for plaintiff in error.

EARL J. WALKER, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Defendant in error is the owner of a 480-acre farm near LaGrange, Illinois. On January 2, 1903, he leased ten acres of said farm to Bales & Son for a term of ten years, "or as long thereafter as the property is suitable for quarrying purposes." Bales & Son covenanted in said lease that in consideration of the leasing of said premises by defendant in error they would pay him at LaGrange, Illinois, the sum of six cents per yard of twenty-seven cubic feet, or 2500 pounds, for stone removed from said leased premises,

and further agreed therein, that after the first year, if good rubblestone was found and sold, to pay for same at the rate of nine cents per cubic yard, or 2500 pounds, payable quarterly on the first days of January, April, July and October of each year during said term. It was provided in said lease that defendant in error was to have the privilege of examining the books of the lessees whenever desired, after payments were due, to verify the accounts rendered; also it was agreed by the lessees, their heirs, executors and assigns, that the whole amount of rent reserved therein should be a valid and first lien upon all buildings and improvements that might be erected on said premises by the said lessees, their heirs, assigns, etc. The said lessees, on the 14th of August, 1905, duly assigned and transferred said lease to Myron J. Carpenter, and the said Carpenter, on the 23d day of November, 1910, duly assigned and transferred the lease, by an indorsement on the back thereof, to the plaintiff in error. On September 10, 1913, defendant in error began this suit in the municipal court of Chicago against the plaintiff in error to recover damages for its failure to comply with the terms of said lease. He set forth in his statement of claim, in substance, the provisions of said lease and the assignments thereof, and that his claim was for damages resulting from the failure of plaintiff in error to develop and quarry rock on said premises according to the terms of the lease; averred that Bales & Son entered upon said premises and found thereon stone suitable for quarrying purposes and did quarry large quantities of said stone thereon, and that said Myron J. Carpenter quarried from said premises large quantities of stone until the month of December, 1910, the said parties paying to defendant in error, as rents, the sum of $12,046.08; that in December, 1910, plaintiff in error took possession of said premises and all buildings, machinery, tools and implements used by the former lessees in quarrying stone on said premises; that it was the duty of plaintiff in error to proceed with due dili-

gence to develop said premises, which contain large quantities of stone for quarrying purposes, and as assignee aforesaid became liable to carry out the obligations of its predecessors, but that it has utterly disregarded its said duty and has failed and refused, and still fails and refuses, to develop said premises for quarrying purposes, contrary to the intent and meaning of the said lease, and that by reason thereof defendant in error has received no rent or royalties since said last date. Plaintiff in error in its affidavit of defense replied that its only obligation to defendant in error arose under said lease and the assignments thereof aforesaid, pursuant to which it went into possession of said premises December 6, 1910; that since that time it has not removed from said premises any stone of any kind, and that under said lease and the assignments thereof it is not required to quarry stones from said premises; that it did not promise or undertake with defendant in error that it would develop said premises and quarry stones therefrom with due diligence or otherwise; that defendant in error has suffered no damages as set forth in his statement of claim, and that plaintiff in error is not indebted to him in any amount as therein set forth. The issues were tried by a jury, which resulted in a verdict and judgment for defendant in error for the sum of $2500. The Appellate Court for the First District affirmed the judgment, and the cause was brought to this court for review by *certiorari.*

It very clearly appears from the provisions of said lease that it is one given for the purpose of quarrying stone. The lessees covenanted to pay as rent or royalty only the price of six cents per cubic yard for stone removed from the premises and nine cents per cubic yard for good rubblestone found and sold by them. The lease was to extend "as long as the property is suitable for quarrying purposes," and the lessees specially covenanted that the lessor was to have the privilege of examining the books of the lessees whenever he desired, after payments were due, to verify the accounts

rendered. The accounts thus mentioned necessarily mean accounts for stone quarried by the lessees and sold, and for the sums due the lessor on such accounting he was to have a lien on all buildings and improvements erected on said premises at any time and on lessees' interest in the lease. In ascertaining the meaning and intent of the lease we are to give meaning and effect to every clause therein, if possible, and from the whole ascertain what is the real intent. We are to suppose, in the first place, that the lease was given for the mutual benefit of the parties, and that they were not joining in a mere nominal lease and using meaningless words and terms as an idle ceremony. If we treat the lease, then, as a lease, there can be no escaping the conclusion that it was given for the purpose of quarrying stone. Defendant in error could receive no rent from the premises by him leased unless stone was quarried. And why should the lessees specially covenant to exhibit their books to verify an accounting if such an accounting was not to be made, and then covenant that the lessor was to have a lien for a claim unless there was to be such a claim? Not only is the lease given for the purpose of having stone quarried from the premises, but there is also just as clearly an implied covenant that the lessees will quarry stone with reasonable diligence if found and so long as found in quantity and kind that may be quarried at a profit to the lessees. *Daughetee* v. *Ohio Oil Co.* 263 Ill. 518; *In re Koch & Balliet's Appeal,* 93 Pa. St. 434.

The argument of plaintiff in error that it would have the right to use the property for any other lawful purpose, if true, in no way militates against the proposition that the lease is for the purpose of quarrying stone and that the plaintiff in error must quarry stone diligently so long as stone may be quarried at a profit.

The argument of plaintiff in error that the burden of proof was upon defendant in error to establish that the demised premises contained stone suitable for quarrying pur-

poses which could have been profitably removed by due diligence and skill is not tenable. Plaintiff in error was in possession of the property and the quarrying machinery left there by the former lessees. It understood the business of quarrying and selling stone and knew the capacity of the machinery on the premises and what machinery was required to successfully quarry the stone. The testimony for the defendant in error did show that the premises had been tested and that stone had been found in great quantities, extending from a few feet below the surface to a depth of four hundred feet; that the stone had been quarried in such quantities that for five years previous to December, 1910, defendant in error had received in royalty more than $2000 per year; that only three acres of the quarry had been quarried, and those three acres only to the depth of about forty feet. There were two other large quarries on said farm at which was being quarried much more of the same stone than the average amount quarried on the premises in question. Plaintiff in error from the very nature of the case was or should have been in possession of all the facts to enable it to show that the quarry could not be operated at a profit, and the law therefore placed that burden of proof on it as an affirmative defense. (*Watson* v. *O'Hern,* 6 Watts, 362; *Hiller* v. *Ray,* 59 Fla. 285.) Plaintiff in error having failed to deny the allegation of defendant in error in his statement of claim that the premises in question contain large quantities of stone for quarrying purposes is in no position now to contend that such allegation was not proved. We think the proof amply supports the allegation. But if it did not, the allegation must now be taken as admitted under rule 19 of the municipal court, which provides as follows: "Every allegation of fact in any statement of claim or counter-claim or set-off, if not denied specifically or by necessary implication in the affidavit of defense filed in reply by the opposite party, shall be taken to be admitted except as against infants and lunatics."

Plaintiff in error, as assignee of the leasehold for the entire term remaining unperformed, was privy in estate with defendant in error and bound to observe all obligations of its assignor. (*Leavers* v. *Cleary*, 75 Ill. 349.) Having retained possession of the premises and having failed to surrender the lease or to develop the property, it is liable for the amount of stone it could by reasonable diligence have quarried and sold at a profit for the remaining three years of the lease, at six cents per cubic yard,—the price fixed in the lease. *Macon* v. *Trowbridge*, 87 Pac. Rep. (Colo.) 1147; *Watson* v. *O'Hern, supra; Daughetee* v. *Ohio Oil Co. supra.*

Plaintiff in error's evidence showed that the capacity of the machinery at the quarry was from 300 to 350 cubic yards per day. If the quarry had only been worked one hundred days in the year, quarrying 300 cubic yards per day, the royalty to defendant in error would have been for the three remaining years $1800 per year, or $5400 for the three years. Conceding that the defendant in error's evidence was erroneous and not competent to prove the amount of stone plaintiff in error by due diligence could have quarried in the three years, the error was entirely harmless and did plaintiff in error no damage, as the small verdict of $2500 damages clearly showed.

The court did not err in refusing to admit plaintiff in error's evidence to the effect that it could not quarry stone at a profit with the small-size crusher at the quarry or with the steam engine there. It was its duty to put machinery there that would do the work at a profit, or to allege and prove that the stone there could not be quarried at a profit.

Plaintiff in error failed to make any legal defense to this action. The court properly instructed the jury as to the measure of the damages.

There is no reversible error in the record, and the judgment is affirmed.                    *Judgment affirmed.*