SCOVILLE COURT CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. FRANK A. OROZON *et al.*, Defendants-Appellants.—COIN WASHER COMPANY, Plaintiff-Appellant, v. DONALD VIRSI, Defendant-Appellee.—MICHAEL SABAN *et al.*, Plaintiffs-Appellees, v. COIN WASHER COMPANY, Defendant-Appellant.

First District (3rd Division)   Nos. 87—0493, 87—0926, 87—1927 cons.

Opinion filed June 15, 1988—Rehearing denied July 21, 1988.

Glenn Seiden & Associates, of Chicago, for appellants.

Sandra K. Burns, of Oak Park, for appellee Scoville Court Condominium Association.

L. Barrett Bodach and Robert C. Cook, both of Heineke, Burke, Healy & Bodach, of Chicago, for appellee Donald Virsi.

Michael G. Cainkar, of Louis F. Cainkar, Ltd., of Chicago, for appellees Michael Saban and Grace Saban.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

This case presents us with the question of the proper interpretation of a standard form lease agreement providing space in laundry rooms for coin-operated washing machines and dryers. In docket No. 87—0926, plaintiff Scoville Court Condominium Association (Scoville) sought to evict defendant Coin Washer Company (Coin Washer) and its president Frank Orozon from use of its laundry room at the termination of their initial lease period. In docket No. 87—1927, plaintiffs Michael and Grace Saban similarly sought to evict defendant Coin Washer from use of their laundry room. In docket No. 87—0493 Coin Washer sued for an injunction to prevent defendant Donald Virsi from interfering with Coin Washer's right to use the laundry room which Virsi leased to it. The trial courts heard all three cases on stipulated facts and granted judgments for Scoville, the Sabans, and Virsi. Coin Washer appeals from all three decisions and we consolidated the ap-

peals for oral argument.

Scoville leased its laundry room to Coin Washer for "the term commencing from September 1, 1976 and expiring August 31, 1986." The parties signed a standard form lease used in the coin washer industry, which Coin Washer supplied. Paragraph 7 of the lease provides:

> "This Lease shall automatically extend for an additional period of ten years from the date of its expiration unless the LESSEE shall give the LESSOR notice in writing at least sixty (60) days prior to the end of its original term that said lease shall not be extended for the additional term. At the expiration of the term herein, or at the expiration of any additional term, in accordance with the provisions hereof this lease shall continue from time to time for additional aggregate like terms unless terminated by either LESSEE or LESSOR by a notice in writing by U.S. Registered or Certified Mail, one to the other, sixty (60) days prior to the end of the term herein or any subsequent aggregate like term thereafter."

Sixty days prior to August 31, 1986, Scoville sent Coin Washer notice that it did not intend to renew the lease, employing the form for notice set out in paragraph 7. On October 28, 1986, Scoville filed suit to evict Coin Washer from use of Scoville's laundry room.

Virsi leased a laundry room in an apartment building he owned to Coin Washer for a "term commencing from March 7, 1977 and expiring March 6, 1984." The lease also contained paragraph 7 of the standard form lease, identical to paragraph 7 of Scoville's lease. In December 1983, more than 60 days prior to the expiration of the term, Virsi sent by certified mail a letter to Coin Washer informing Coin Washer that he would not renew the lease. On March 31, 1986, Virsi disconnected the washers and dryers which Coin Washer had installed in the laundry room of the apartment building. Coin Washer then brought suit for an injunction to prevent Virsi from interfering with Coin Washer's use of the laundry room. Coin Washer also sought specific performance of the lease.

The Sabans leased to Coin Washer a laundry room in an apartment building which they owned. The initial term of their lease was June 25, 1977, to June 25, 1984. The Sabans, like Virsi and Scoville, signed an industry form lease which included as its paragraph 7 a paragraph identical to paragraph 7 of Scoville's lease. The Sabans filed suit to evict Coin Washer in 1987. As in the Scoville and Virsi cases, Coin Washer does not object to the form or the timing of the notice it received from the Sabans. Instead, Coin Washer contends on appeal

that under the terms of the contracts, only Coin Washer had the right to terminate the leases at the expirations of the initial terms of the leases.

Paragraph 7 of each lease expressly provides that the lease "shall automatically extend for an additional period of ten years *** unless the LESSEE shall give the LESSOR notice in writing *** that said lease shall not be extended." This sentence apparently grants the right not to extend the lease exclusively to the lessee, Coin Washer. However, the next sentence apparently grants both lessee and lessor the right to terminate the lease "[a]t the expiration of the term herein, or at the expiration of any additional term."

■■ ■ Our interpretation of leases is guided by general principles of contract construction. (*Chicago Title & Trust Co. v. Southland Corp.* (1982), 111 Ill. App. 3d 67, 70, 443 N.E.2d 294.) Thus, we must give effect to the intentions of the parties as those intentions are expressed in the language of the contract. (*National Aircraft Leasing v. American Airlines, Inc.* (1979), 74 Ill. App. 3d 1014, 1020, 394 N.E.2d 470.) The contract "should be given a fair and reasonable interpretation based on consideration of all its language and provisions." (*Shelton v. Andres* (1985), 106 Ill. App. 3d 153, 159, 478 N.E.2d 311.) We must reconcile and harmonize conflicting provisions, if such reconciliation is possible (*In re Support of Halas* (1984), 104 Ill. 2d 83, 92, 470 N.E.2d 960), but if reconciliation is not possible, the resulting ambiguity will be construed against the party who drafted the contract. *Sanni, Inc. v. Fiocchi* (1982), 111 Ill. App. 3d 234, 241, 443 N.E.2d 1108.

■ Coin Washer argues that the two sentences of paragraph 7 are not inconsistent because the first sentence gives Coin Washer the sole right to extend the contract for one additional period, whereas the second sentence grants both parties the option of renewal at the end of the additional period. Although Coin Washer stresses the distinction between an extension and a renewal, that distinction has no bearing on the problem of the proper application of paragraph 7 to the facts of this case. If the lessor has either an option to renew, or an option to extend, or a right to terminate the contract at the end of the initial contract period, the trial court decisions must be affirmed; if the lessor does not gain any of those options until the end of the first additional period, as Coin Washer urges, then the trial court decisions must be reversed. Thus we must determine when, under the contract, the lessor acquires the option to renew or terminate the contract.

The second sentence of paragraph 7 specifically grants both par-

ties the right to terminate the contract "[a]t the expiration of the term herein." "[T]he term herein" must refer to the initial 7- or 10-year period of the contract. The contract uses that term in contrast with "any additional term." Insofar as the first sentence of paragraph 7 apparently grants the lessee the exclusive right to extend the contract after its initial period, the two sentences are in irreconcilable conflict. Since this creates an ambiguity in the contract, we construe the sentences against Coin Washer as the party which drafted the contract.

Therefore, we agree with the findings of the three trial courts: the contracts gave Scoville, Virsi, and the Sabans the right to terminate their contracts at the expirations of the initial periods of the contracts. The judgment of the trial courts in all three cases are affirmed.

Affirmed.

McNAMARA and FREEMAN, JJ., concur.